2016 ND 93

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Rodney Michael ROGAHN, Defendant and Appellant.**

No. 20150297.

Supreme Court of North Dakota.

May 26, 2016.

Joshua J. Traiser, Assistant State's Attorney, Minot, ND, for plaintiff and appellee.

Tyler J. Morrow, Grand Forks, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶1] Rodney Rogahn appealed from a criminal judgment after he conditionally pled guilty to various drug crimes, reserv-

ing the right to appeal an order denying his motion to suppress certain evidence and his request for a *Franks* hearing. We affirm.

## I

[¶ 2] The following information comes from the affidavit of probable cause offered in support of a warrant to search Rogahn's residence. On October 23, 2013, a confidential informant ("CI") working with the Ward County Narcotics Task Force met with and purchased a substance from Trisha Engstrom. The substance was identified as likely being marijuana. Engstrom left this meeting and went to a residence identified as belonging to Rogahn, where Engstrom was seen entering the residence.

[¶ 3] The CI again met with Engstrom on October 29, 2013, with the CI again purchasing what an officer identified as marijuana. During this meeting, the CI inquired about purchasing a larger quantity of marijuana. Engstrom replied she would contact her "source" for pricing information. Engstrom further stated she could arrange another meeting for this purchase during the evening of October 29, 2013. After this second meeting, Engstrom parked her vehicle in front of her residence, which was across the street from Rogahn's residence. Officers observed Engstrom immediately walk to Rogahn's residence. Within approximately five minutes of leaving the second meeting, the CI received a message from Engstrom with the requested pricing information. During the time the CI arranged a third meeting with Engstrom, the officers did not see Engstrom leave Rogahn's residence.

[¶ 4] Prior to the third meeting, officers applied for a daytime search warrant for Rogahn's residence. The application included the affidavit of probable cause outlined above. After finding probable cause existed, the magistrate issued the daytime search warrant at 8:27 p.m. Officers arrested Engstrom at the third meeting, after which they executed the search warrant of Rogahn's residence at 9:54 p.m. The search lasted until 11:25 p.m. As a result of the search, Rogahn was charged with various drug related crimes.

[¶ 5] Rogahn moved to suppress evidence obtained in the search, arguing no probable cause existed and the officers executed the warrant at an unreasonable time. Rogahn further requested a *Franks* hearing, arguing the attesting officer made false statements in the affidavit of probable cause and the false statements were necessary for a finding of probable cause. The district court denied Rogahn's motion, concluding probable cause existed and the officers executed the warrant at a reasonable time. The court also denied a *Franks* hearing, concluding any false statements by the attesting officer were not made knowingly, intentionally, or recklessly with regard to the truth and the allegedly false statements were not necessary for a finding of probable cause.

## II

[¶ 6] Rogahn argues the district court erred by denying his motion to suppress certain evidence because the affidavit of probable cause did not support a finding of probable cause. He also argues the court erred by denying his motion to suppress because executing the daytime search warrant at 9:54 p.m. was unreasonable. A district court's decision to deny a motion to suppress will not be reversed on appeal if there is sufficient competent evidence capable of supporting the district court's findings, and if its decision is not contrary to the manifest weight of the evidence. *State v. Johnson*, 2011 ND 48, ¶ 9, 795 N.W.2d 367.

## A

[¶ 7] Under the Fourth Amendment of the United States Constitution and Article I, § 8 of the North Dakota Constitution, a search warrant may only be issued upon a showing of probable cause. *Johnson*, at ¶ 10. "Probable cause to search exists if the facts and circumstances relied on by the magistrate would warrant a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched." *State v. Ballweg*, 2003 ND 153, ¶ 11, 670 N.W.2d 490 (quoting *State v. Thieling*, 2000 ND 106, ¶ 7, 611 N.W.2d 861) (internal quotations omitted). In determining whether probable cause exists, courts "may not look beyond the four corners of the affidavit or application for issuance of the warrant." *State v. Schmalz*, 2008 ND 27, ¶ 13, 744 N.W.2d 734. "The determination of whether probable cause exists to issue a search warrant is a question of law" fully reviewable on appeal. *Johnson*, at ¶ 9 (quoting *Schmalz*, at ¶ 12). In marginal cases, we will defer to the magistrate's determination as to the existence of probable cause. *Id.* at ¶ 10.

[¶ 8] After reviewing the affidavit of probable cause, we conclude probable cause supported the issuance of the search warrant. After the CI's October 23, 2013 meeting with Engstrom, Engstrom went to and entered Rogahn's residence. Engstrom's pattern of behavior on October 29, 2013, further connected Rogahn's residence to drug activity. Following this meeting, Engstrom parked her vehicle and immediately proceeded towards Rogahn's residence rather than going to her own residence, mirroring what she had done on October 23, 2013. Within minutes of leaving the meeting, Engstrom contacted the CI with the pricing information and arranged for a larger purchase later that evening. Engstrom's repeated conduct after each meeting established an association between herself and her drug activities and Rogahn's residence, warranting a person of reasonable caution in believing evidence of drug activity could be found at the residence. *See State v. Ebel*, 2006 ND 212, ¶ 13, 723 N.W.2d 375 (stating "there must be a nexus between the place to be searched and the contraband sought" to establish probable cause). The district court properly concluded probable cause existed.

[¶ 9] Rogahn argues a number of circumstances militate against a finding of probable cause, including the affidavit not establishing a time frame for Engstrom leaving the meetings and going to Rogahn's residence, the affidavit not establishing Engstrom contacted the CI with the pricing information from within the residence, and the affidavit not establishing Rogahn was present or had knowledge of Engstrom entering his residence. Although the affidavit does not contain specific times to establish temporal proximity between Engstrom leaving the meetings and going to Rogahn's residence, and it cannot be said with certainty Engstrom contacted the CI from within Rogahn's residence, the absence of such facts does not negate the other facts and circumstances supporting a finding of probable cause. Moreover, facts indicating Rogahn's lack of presence or knowledge of Engstrom entering his residence are immaterial to the probable cause analysis because Engstrom's conduct connected the residence to current drug activity irrespective of either his presence or knowledge. Rogahn's arguments regarding the alleged deficiencies of the affidavit of probable cause are unavailing because other undisputed circumstances support a finding of probable cause.

[¶ 10] Rogahn also argues probable cause did not exist by analogizing individu-

al factual layers contained in the affidavit of probable cause to those in other cases in which probable cause did not exist, such as *State v. Thieling*, 2000 ND 106, 611 N.W.2d 861, *State v. Mische*, 448 N.W.2d 415 (N.D.1989), and *State v. Handtmann*, 437 N.W.2d 830 (N.D.1989). Through this parsing, Rogahn attempts to isolate factual layers in analyzing whether probable cause existed. Such compartmentalization is improper because the laminated total of all the factual layers contained in the affidavit of probable cause determines whether probable cause existed. *State v. Damron*, 1998 ND 71, ¶ 7, 575 N.W.2d 912 (stating we "apply the totality-of-the-circumstances test to review whether information before the magistrate was sufficient to find probable cause....,"). While not every factual layer in the affidavit would have warranted a person of reasonable caution to believe evidence of drug activity could be found in Rogahn's residence, the laminated total of all such factual layers was sufficient to do so. Rogahn's argument is further misplaced because analogizing to fact-sensitive cases, including those cited above, is of limited import. The particularities of this case determine whether probable cause existed, not those of other cases. The district court correctly concluded probable cause existed and its decision to deny Rogahn's motion to suppress was not contrary to the manifest weight of the evidence.

B

[¶ 11] By executing the daytime search warrant at 9:54 p.m., Rogahn argues the warrant execution was impermissible in that it allowed the officers to effectively execute a nighttime search without the showing justifying that search. A "warrant must be served in the daytime, unless the issuing authority, by appropriate provision in the warrant, and for reasonable cause shown, authorizes its execution at times other than daytime." N.D.R.Crim.P. 41(c)(1)(E). " 'Daytime' means the hours from 6:00 a.m. to 10:00 p.m. according to local time." N.D.R.Crim.P. 41(h)(2)(B). "[A] nighttime, 10:01 p.m. to 5:59 a.m., search warrant requires a separate showing of probable cause necessitating the need to execute the warrant at a time other than the daytime." *State v. Holly*, 2013 ND 94, ¶ 35, 833 N.W.2d 15.

[¶ 12] The district court concluded the officers reasonably executed the warrant. Contrary to Rogahn's argument, the realities of this case necessitated executing the daytime warrant within minutes of 10:00 p.m. The officers obtained the warrant at 8:27 p.m. and executed the warrant at 9:54 p.m. In the interim, the officers met with and arrested Engstrom. Nothing in the record indicates the officers deliberately delayed this execution to thwart the additional requirements for executing a nighttime search. Moreover, while Rogahn correctly notes the officers could have delayed execution of the warrant because the warrant was valid for multiple days, such a delay could have prompted destruction of evidence following Engstrom's arrest and her failure to return to the residence after the third meeting, as she had done following the first two meetings. Furthermore, the search ended at 11:25 p.m. Under these circumstances, the district court properly concluded the officers reasonably executed the daytime search warrant at 9:54 p.m. and its decision to deny Rogahn's motion to suppress was not contrary to the manifest weight of the evidence. *Cf. Gullickson v. State*, 2014 ND 155, ¶ 14, 849 N.W.2d 206 (affirming a district court's conclusion that counsel's failure to challenge the execution of a daytime search warrant executed at 9:50 p.m. was not ineffective assistance of counsel).

## III

[¶ 13] Rogahn argues the district court erred in denying his request for a *Franks* hearing because the affidavit of probable cause contained two false statements regarding the night of October 29, 2013. Specifically, Rogahn complains of the affidavit stating Engstrom was seen walking to Rogahn's residence and Engstrom was not observed leaving Rogahn's residence while contacting the CI. Rogahn argues these statements were false, misleading, and were necessary for a finding of probable cause under these circumstances.

[¶ 14] "When a defendant alleges false or misleading statements have been made in the application for a search warrant, we address the issue under the standard set forth in [*Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) ]." *Ebel,* at ¶ 20. An affidavit in support of a search warrant must contain "truthful" statements. *Id.* Under *Franks,* this does not require every statement contained in the affidavit necessarily be correct, but rather requires the statement "be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* (quoting *Franks,* 438 U.S. at 165, 98 S.Ct. 2674). "A false statement under *Franks* is 'one that misleads a neutral and detached magistrate into believing the stated facts exist, and those facts in turn affect the magistrate's evaluation of whether or not there is probable cause.'" *Id.* at ¶ 21 (quoting *State v. Donovan,* 2004 ND 201, ¶ 7, 688 N.W.2d 646). "That standard may also apply to statements that are deliberately false or misleading by omission." *Id.* A *Franks* hearing is required only if:

> (1) a defendant makes a substantial preliminary showing, accompanied by an offer of proof, that false statements were made in support of a search warrant, either knowingly and intentionally or with reckless disregard for the truth, and (2) the allegedly false statements are necessary to a finding of probable cause. No evidentiary hearing is required if there remains sufficient evidence to support a finding of probable cause without the allegedly false statements, and allegations that false statements were negligently or innocently made are insufficient to necessitate an evidentiary hearing.

*Id.* at ¶ 22 (quoting *State v. Rangeloff,* 1998 ND 135, ¶ 10, 580 N.W.2d 593). The defendant's burden of making a threshold showing as to the necessity of a *Franks* hearing is something less than a preponderance of the evidence. *Id.*

[¶ 15] The district court found Rogahn failed to make a substantial preliminary showing the attesting officer made the allegedly false statements knowingly, intentionally, or with a reckless disregard for the truth. We review this finding under the following standard:

> [T]he district court's ruling on whether a "substantial preliminary showing" has been made is a finding of fact, but we review the district court's finding of fact in a preliminary criminal proceeding under a separate, but comparable, standard. We will not reverse a district court's findings of fact in preliminary proceedings of a criminal case, "if, after the conflicts in the testimony are resolved in favor of affirmance, there is sufficient competent evidence fairly capable of supporting the [district] court's findings, and the decision is not contrary to the manifest weight of the evidence."

*Id.* at ¶ 23 (quoting *Rangeloff,* at ¶ 10) (internal citations omitted).

[¶ 16] Assuming, without deciding, the complained of statements qualify as false or misleading statements under *Franks,* we cannot say the district court's conclusion Rogahn failed to make a sub-

stantial preliminary showing the affiant made the statements knowingly, intentionally, or with a reckless disregard for the truth was contrary to the manifest weight of the evidence. It is uncontested that the observing officers did not see Engstrom enter Rogahn's residence on October 29, 2013. But based upon the affidavit, the officers assumed Engstrom entered the residence. To the extent the affidavit reflects this assumption by way of including the complained of statements, such inclusion does not warrant a *Franks* hearing because the affidavit merely describes the situation as the officers best understood it to be, incomplete as it may have been at the time. Nothing in the record shows the officers included information in the affidavit they knew to be false, nor is there anything showing the officers included fabricated information in the affidavit. Rather, the record reflects the officers acted with reasonable diligence in acquiring the information included in the affidavit. While further specificity regarding Engstrom's conduct would have been preferable, we cannot say the failure to include this specificity within the affidavit, when further information may not have been available, was done with a reckless disregard for the truth. Under these circumstances, the district court's conclusion Rogahn failed to make the substantial preliminary showing required for a *Franks* hearing was not contrary to the manifest weight of the evidence. The court correctly denied Rogahn's request for a *Franks* hearing.

## IV

[¶ 17] We do not address the other arguments raised because, after consideration, they are either unnecessary to this decision or are without merit. We affirm the order denying Rogahn's motion to suppress and his request for a *Franks* hearing.

[¶ 18] CAROL RONNING KAPSNER, LISA FAIR McEVERS, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.