Jensen, Justice, dissenting.
[¶ 20] In Section IIA of the majority opinion, the majority concludes the evidence seized under the initial warrant must be suppressed. I dissent from the majority opinion and the reversal of the district court as provided in Section IIA because the facts and circumstances relied on by the district court in issuing the search warrant would lead a person of reasonable caution to believe the contraband or evidence sought, proceeds from illegal activities, probably would have been found within the package. I would affirm the denial of the motion to suppress the evidence obtained under the warrant related to the shipping package and affirm the district court's judgment in its entirety.
[¶ 21] This Court has repeatedly recognized that under the Fourth Amendment of the United States Constitution and Article I, § 8 of the North Dakota Constitution, a search warrant may only be issued upon a showing of probable cause. State v. Rogahn , 2016 ND 93, ¶ 7, 879 N.W.2d 454. "Probable cause to search exists if the facts and circumstances relied on by the magistrate would warrant a person of reasonable caution to believe the contraband or evidence sought probably will be found in the place to be searched." Id. (citations omitted). " 'The determination of whether probable cause exists to issue a search warrant is a question of law' fully reviewable on appeal." Id. (quoting State v. Schmalz , 2008 ND 27, ¶ 12, 744 N.W.2d 734 ). This Court "defer[s] to a [district court's] determination of probable cause so long as a substantial basis for the conclusion exists." State v. Johnson , 2011 ND 48, ¶ 10, 795 N.W.2d 367 (quoting State v. Ebel , 2006 ND 212, ¶ 12, 723 N.W.2d 375 ).
*844 "[M]arginal cases [are decided] in favor of the [district court's] determination." Ebel , at ¶ 12.
[¶ 22] The majority's examination of the information provided by law enforcement in support of the search warrant is contained in paragraphs 8 and 9 of the majority opinion. The majority opinion summarizes the information provided by law enforcement as follows: there was "bare bones information," "conclusions without detailing underlying information," "nothing more than a hunch" Biwer was sending illicit proceeds from the sale of drugs, and stale drug convictions do not support probable cause to search the shipping package. Those conclusions are not correct independently and ignore the collective weight of the information when all of the facts are viewed together.
[¶ 23] In paragraph 8 of the majority opinion in reference to the investigating officer's training and experience and the relevance of that experience, the majority concludes that law enforcement's "bare bones information," and "conclusions without detailing the underlying information" is not sufficient to support the warrant. The full text of the information provided to law enforcement in support of the investigating officer's training and experience reads as follows:
A. Yes. I graduated from North Dakota State University in 1992. After that I worked in the State of Nevada in the law enforcement academy attending the Nevada Law Enforcement Academy and then in 2002 I began employment with the Bismarck Police Department attending the Bismarck Police Department-or excuse me, the North Dakota Law Enforcement Academy, and I've had multiple courses in interdiction training and identification of narcotics and illegal substances including drug recognition expert, financial crimes, and shipping industry methods of illicit substances. I currently work for the Bismarck Police Department as a narcotics investigator.
Q. Did you become involved with an investigation earlier today?
A. Yes. Earlier this afternoon I was contacted by an employee at [name deleted], the package delivery service, [address deleted] here in Bismarck, Burleigh County. They often call us when they get tips concerning suspicious packages, and a Mr. Mitchell, M-I-T-C-H-E-L-L, Biwer, B-I-W-E-R, brought in a package and his behavior was different than normal customers. He was explaining too much and talking too much about why the package was being sent out. And then when questioned what was in the package, he said it was an owner's manual, and the cost for shipping this owner's manual was $47 for overnight shipping to a Dagere, D-A-G-E-R-E, Forget, F-O-R-G-E-T, in Denver, Colorado.
We know from our training and experience and current political laws that Colorado is a major source state of marijuana for North Dakota and other surrounding states. Mr. Biwer does have a previous conviction for possession-class A possession of controlled substance, marijuana in 2013, and Mr. Forget has a conviction for possession of marijuana with intent to deliver from 2010.
I believe based on combination of the criminal histories, the package with the dollar amount exceeding the value of the item inside the package that this is a-and we have seen many times in the past-that Mr. Biwer is sending illegal proceeds back to the *845 source state of Colorado for controlled substances in that package at [name deleted] with the tracking number 7862 6354 0558.
[¶ 24] We know from the transcript of the oral application for the search warrant that the investigating officer had the following training and experience: a bachelor's degree, law enforcement specific training, approximately 15 years of law enforcement experience (not including the time he worked in Nevada), specific training in "shipping industry methods of illicit substances," and he is currently a narcotics investigator with the Bismarck Police Department. The investigating officer then stated, based on his training and experience, that he knows Colorado is a major source of marijuana entering North Dakota and other surrounding states, he had confirmed Biwer had a previous conviction for possession of controlled substance in 2013, and the stated recipient of the package had a conviction for possession of marijuana with intent to deliver in 2010. He noted his prior experience with the criminal activity of sending proceeds from North Dakota to Colorado and that shipping a package for an amount in excess of the apparent value of the stated contents was common in narcotics-related transactions. The investigating officer subsequently summarized his opinion as follows: based on the combination of the criminal histories, that the package was sent with postage exceeding the value of the item inside the package (something he had seen in many drug related cases), he believed Biwer was sending illegal proceeds back to the source state of Colorado. I disagree with the majority opinion that this represents "bare bones information" and "conclusions without detailing the underlying information."
[¶ 25] In paragraph 9 of the majority opinion, the majority concludes the investigating officer had "nothing more than a hunch" that the proceeds were from the sale of drugs. As noted above, the shipping company employee believed Biwer was lying about the contents of the package, Biwer acted oddly at the shipping store, the outline of the contents of the package was consistent with cash, Biwer has a prior possession of narcotics conviction, the stated recipient of the package had a prior distribution of narcotics conviction, the package shipping expense exceeded the value of the item being shipped, and Colorado is a common source of narcotics entering North Dakota. These facts are not a mere hunch and, collectively, these facts and circumstances would warrant a person of reasonable caution to believe the contraband or evidence sought probably would be found within the package.
[¶ 26] In paragraph 9, the majority opinion also attacks the prior drug convictions. This Court has previously and correctly concluded an application for a search warrant based on stale information is insufficient to support a warrant. See State v. Ringquist , 433 N.W.2d 207, 213 (N.D. 1988). This case is distinguishable. First, the primary "suspect" in Ringquist had convictions that were decades old, not nearly as recent as the convictions of the two individuals in this case. Id. at 209. Second, Ringquist involved the search of a residence. Id. Third, this case includes a search of a package which has been directly tied to the suspected activity. Fourth, Ringquist involved information provided primarily, and initially exclusively, by an anonymous informant in contrast to the directly observed package in this case. Id. at 208-09. Finally, in the present case, law enforcement was able to describe the specific activity that was afoot, the shipment of drug proceeds. The discussion of stale convictions as provided in our prior decisions is not controlling in this case.
*846 [¶ 27] Our review of this case should be guided by our prior precedents, which requires this Court to defer "to a [district court's] determination of probable cause so long as a substantial basis for the conclusion exists." Johnson , 2011 ND 48, ¶ 10, 795 N.W.2d 367 (quoting Ebel , 2006 ND 212, ¶ 12, 723 N.W.2d 375 ). Even when this Court reviews "marginal cases," we are required to hold in favor of the district court's determination. Ebel , at ¶ 12. Because there is a substantial basis for the issuance of the first search warrant relative to the shipping container, I would defer to the district court's determination and affirm the denial of the motion to suppress. I would affirm the judgment.
[¶ 28] Jon J. Jensen
Mark J. McCarthy, D.J.